

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-07-00143-CR

_____

KENDRICK RAY MILES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 06-0539X

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

Trouble had been brewing for a few days, and Kendrick Ray Miles[1] had at least some involvement at each step of its development. It had started when a couple Miles knew had a physical fight. It grew from there, with a fight at the Green Acres Club involving Miles and others, a meeting including Miles at a Marshall residence where a further fight was discussed, and ultimately a shootout at Spring Street Park in Marshall, during which Miles and others shot guns, as a result of which shootout at least five people were injured, one of which, Lee McCowan, died. That was the story told by at least some of the evidence at Miles' trial.

Miles was indicted for felony murder, deadly conduct, and criminal conspiracy. A jury found Miles guilty of all three charges and assessed punishment at twenty years' imprisonment for murder and ten years' imprisonment for both the deadly conduct and the criminal conspiracy charges. Miles raises nine issues on appeal arguing that the convictions for both felony murder and deadly conduct violate the Double Jeopardy Clause, that the trial court erred in admitting an out-of-court statement by a co-defendant, that the trial court erred in instructing the jury on the law of parties, and that the evidence is legally and factually insufficient. We affirm the judgment of the trial court because (1) the trial court did not err in instructing the jury on the law of parties, (2) the Double Jeopardy Clause was not violated, (3) the trial court did not abuse its discretion in admitting the statement made by a co-defendant, and (4) the evidence is legally and factually sufficient.

---

[1]Because this opinion refers both to Kendrick Ray Miles and his brother, Cedric Miles, we will refer to Kendrick Ray Miles as Miles and to Cedric Miles as Cedric, unless otherwise specified.

2

*(1)      The Trial Court Did Not Err in Instructing the Jury on the Law of Parties*

Miles claims that the trial court erred in instructing the jury on the law of parties.[2] According to Miles, there is no evidence Miles intentionally solicited, encouraged, aided, or attempted to aid another person to shoot at, or in the direction of, anyone. Under Texas law, a person is criminally culpable as a party if, with intent to promote or assist the commission of the offense, the person solicits, encourages, aids, directs, or attempts to aid another person in commission of the offense. TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 2003). When evidence shows that the defendant was physically present during the commission of the offense and that the defendant encouraged or aided the crime's commission by either words, agreement, or other affirmative and supportive conduct, the evidence is sufficient to sustain a conviction under the law of parties. *King v. State*, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000); *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (op. on reh'g).

When there is evidence that the defendant is guilty as a party, a trial court may charge the jury on the law of parties even if the indictment charges the defendant as a principal. *Swope v. State*, 805 S.W.2d 442, 444 (Tex. Crim. App. 1991); *Rosillo v. State*, 953 S.W.2d 808, 811 (Tex. App.—Corpus Christi 1997, pet. ref'd); *see Marable v. State*, 990 S.W.2d 421, 424 (Tex. App.—Texarkana 1999), *aff'd*, 85 S.W.3d 287 (Tex. Crim. App. 2002); *see also* TEX. PENAL CODE

---

[2]This claim represents Miles' fifth point of error.

3

ANN. § 7.01(c) (Vernon 2003). As discussed below, there is evidence that Miles was guilty under the law of parties. We overrule this point of error.

*(2)     The Double Jeopardy Clause Was Not Violated*

Miles asserts that convicting him of both deadly conduct and felony murder put him in double jeopardy because the underlying felony was the deadly conduct charged in the separate count.[3] According to Miles, the Double Jeopardy Clause prohibits the trial court from convicting him for both deadly conduct and murder.[4]

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. This guarantee applies to state prosecutions through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794 (1969). The Double Jeopardy Clause of the Fifth Amendment embodies several concepts: it protects a person from being twice prosecuted for the same offense; it precludes the State from prosecuting someone for the same offense or a lesser-included offense after a jury has acquitted the accused; and it bars punishing a person more than once for the same offense. *Nickerson v. State*, 69 S.W.3d 661, 670 (Tex. App.—Waco 2002, pet. ref'd); *see also* U.S. CONST. amend. V; *Hutchins v. State*, 992 S.W.2d 629, 631 (Tex. App.—Austin 1999, pet. ref'd, untimely filed). The Double Jeopardy Clause

---

[3]This is Miles' third point of error.

[4]Miles does not allege his conviction for criminal conspiracy violates the Double Jeopardy Clause. The United States Supreme Court has held that criminal conspiracy is a separate offense from the underlying predicate offense for double jeopardy purposes. *See United States v. Felix*, 503 U.S. 378, 383 (1992).

4

is violated if a defendant is prosecuted twice for the same offense. *Ex parte Hawkins*, 6 S.W.3d 554, 556 (Tex. Crim. App. 1999); *see Sanabria v. United States*, 437 U.S. 54, 69–70 (1978).

Miles must show, to prevail on his double jeopardy claim, that the two offenses constitute "the same offense" under the Double Jeopardy Clause. *See Ortega v. State*, 171 S.W.3d 895, 896 (Tex. Crim. App. 2005) (en banc). In determining whether conviction for two offenses constitutes double jeopardy, we will apply the test commonly called the "same elements" or *Blockburger* test announced by the United States Supreme Court some seventy-five years ago. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932); *Ephraim v. State*, 237 S.W.3d 438, 440 (Tex. App.—Texarkana 2007, pet. ref'd); *see United States v. Dixon*, 509 U.S. 688, 704 (1993) (reinstating the *Blockburger* test). *Blockburger* ruled that, where one act or transaction violates two different criminal statutes, courts determine whether there are two offenses or only one by determining "whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304.

(a)    *Deadly Conduct Could Be a Lesser-Included Offense of Felony Murder*

Both the United States Supreme Court and the Texas Court of Criminal Appeals have held that associated greater-inclusive and lesser-included offenses constitute the same offense for double jeopardy purposes. *See Brown v. Ohio*, 432 U.S. 161, 169 (1977); *Hall v. State*, 225 S.W.3d 524, 533 (Tex. Crim. App. 2007). Miles cites *Honeycutt v. State*, 82 S.W.3d 545, 549 (Tex. App.—San Antonio 2003, pet. ref'd), for the proposition that deadly conduct is a lesser-included offense of

5

aggravated assault. Miles argues "[t]he instant case presents the exact same fact scenario, with the exception that the victim died in the instant case." Applying the reasoning of *Honeycutt* and the Texas Court of Criminal Appeals opinion in *Jacob v. State*, 892 S.W.2d 905, 908 (Tex. Crim. App. 1995), Miles argues the deadly conduct conviction is for the same offense as the felony murder conviction.

The Texas Court of Criminal Appeals has recently adopted the "cognate-pleadings" test to evaluate whether an offense is a lesser-included offense of another.[5] *See Hall*, 225 S.W.3d at 535; *Jones*, 241 S.W.3d at 670. The court rejected the "cognate-evidence" approach in which the court "includes the facts adduced at trial in its lesser-included offense analysis." *See Hall*, 225 S.W.3d at 535. "Facts required" under Article 37.09 means the evidence legally required to prove the elements of the offense. *Id.*; *see* TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 2006). Under the "cognate-pleadings" test, a court compares the statutory elements of the greater offense, as modified by the particular allegations in the indictment, with the statutory elements of the lesser offense. *Hall*, 225

---

[5]In *Hall*, the court returned to a two-step analysis in determining whether a defendant is entitled to a lesser-included offense instruction. *Jones v. State*, 241 S.W.3d 666, 670 (Tex. App.—Texarkana 2007, no pet.). The first step on appellate review is to ascertain whether there is, indeed, a lesser-included offense by comparing the elements of the greater offense and the lesser offense as contained in the charging document without any reference to the facts or evidence of the particular case. *Id*. After the first determination is answered positively, the second step is to conduct an inquiry concerning whether there was sufficient evidence at trial to have required the court to submit to the jury the issue of the lesser-included offense. *Id*. at 670–71. The Texas Court of Criminal Appeals has announced that the "cognate-pleadings" approach should be used to determine whether an offense is a lesser-included offense for double-jeopardy challenges. *Bigon v. State*, No. PD-1769-06, 2008 Tex. Crim. App. LEXIS 1 (Tex. Crim. App. Jan. 16, 2008).

S.W.3d at 536; *see also Ortega*, 171 S.W.3d at 899 ("The courts of Texas are bound to follow the Supreme Court's rule that Fifth Amendment jeopardy questions must be resolved by application of the *Blockburger* test, which compares elements of offenses--not conduct."). Applying the "cognate-pleadings" test, the Texas Court of Criminal Appeals has determined deadly conduct is a lesser-included offense of capital murder. *See Flores v. State*, 245 S.W.3d 432 (Tex. Crim. App. 2008).

Miles was indicted for felony murder in addition to a separate count of deadly conduct. The indictment provides in pertinent part that Miles did:

### COUNT I:
### PARAGRAPH A

intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, to-wit: shooting a firearm at an individual, that caused the death of Lee McCowan

### PARAGRAPH B:

. . . intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, to-wit: shooting a firearm at an individual, that caused the death of Lee McCowan, and the defendant was then and there in the course of intentionally or knowingly committing a felony, to-wit: deadly conduct, and said death of Lee McCowan was caused while the defendant was in the course of and in the furtherance of the commission or attempt of said felony

### COUNT II:

. . . knowingly discharge a firearm at or in the direction of individuals, namely, Samuel Spratling, Broderick Sanders, Kendrick Dunn and Chris Dunn

Under the above indictment, Count I, Paragraph B, charges Miles with felony murder under Section 19.02(b)(3) of the Texas Penal Code, and Count II charges Miles with deadly conduct under Section 22.05(b)(1). *See* TEX. PENAL CODE ANN. §§ 19.02(b)(3), 22.05(b)(1) (Vernon 2003).

A person commits felony murder when he or she commits or attempts to commit an act, clearly dangerous to human life, which causes the death of an individual, while in the course of committing, in furtherance of, or in immediate flight from the commission or attempt to commit a felony, other than manslaughter. *See* TEX. PENAL CODE ANN. § 19.02(b)(3). The State alleged that the felony underlying the felony murder was deadly conduct. It is well established under Texas law that deadly conduct can be the underlying felony for felony murder. *See Barfield v. State*, 202 S.W.3d 912, 914 n.1 (Tex. App.—Texarkana 2006, pet. ref'd); *Yandell v. State*, 46 S.W.3d 357, 361 (Tex. App.—Austin 2001, pet. ref'd); *Rodriguez v. State*, 953 S.W.2d 342 (Tex. App.—Austin 1997, pet. ref'd); *see also Johnson v. State*, 4 S.W.3d 254, 255–58 (Tex. Crim. App. 1999) (felony murder does not require proof of any additional dangerous act beyond that covered by underlying felony). A person commits deadly conduct under Section 22.05 by knowingly discharging a firearm at or in the direction of one or more individuals. *See* TEX. PENAL CODE ANN. § 22.05(b)(1).

Examining the statutory elements[6] of felony murder as modified by the indictment, the State must prove the following: (1) Miles, or a co-actor, committed or attempted to commit an act clearly

---

[6]"'Element of offense' means: (A) the forbidden conduct; (B) the required culpability; (C) any required result; and (D) the negation of any exception to the offense." TEX. PENAL CODE ANN. § 1.07(a)(22) (Vernon Supp. 2007).

dangerous to human life which caused the death of an individual, (2) while in the course of, in furtherance of, or in immediate flight from, firing a firearm at or in the direction of one or more individuals.

Next, we compare the above elements to the statutory elements of the alleged lesser-included offense, as modified by the indictment. *See Hall*, 225 S.W.3d at 536. To prove deadly conduct, the State must prove that Miles, or a co-actor, fired a firearm at or in the direction of one or more individuals.

"We then ask the question that Article 37.09(a) poses: are the elements of the lesser offense 'established by proof of the same or less than all the facts required to [establish] the commission of the offense charged?'" *Id*. Because all of the elements of deadly conduct are required to prove felony murder committed in the course of committing deadly conduct, deadly conduct could be a lesser-included offense of felony murder.

Our inquiry is not over, however. Felony murder in this case is a lesser-included offense only if the same violation of deadly conduct statute was alleged both to prove felony murder and to prove Count II. An examination of the indictment reveals that the facts necessary to prove the manner and means of each count differ. The manner and means can affect the availability of lesser-included offenses. *See id.* at 531 (noting "[a]ssault by committing bodily injury is a lesser-included offense of aggravated assault by inflicting serious bodily injury, but not of aggravated assault by threat with

9

a deadly weapon").  We must determine whether the difference in the manner and means of the two deadly conduct allegations results in multiple violations of the same statute.

> (b)     *The Deadly Conduct Offense Alleged in Count II Is Not the Same Deadly Conduct Offense Underlying the Felony Murder Allegation in Count I*

Although deadly conduct may be a lesser-included offense of felony murder, it does not automatically follow that the deadly conduct alleged in Count II of the indictment in this case is a lesser-included offense of the felony murder alleged in Count I of the indictment.  A person can commit multiple violations of a single statute.  When a case involves multiple violations of the same statute, the *Blockburger* "same elements" test does not apply.[7]  *Saenz v. State*, 131 S.W.3d 43, 51 (Tex. App.—San Antonio 2003), *aff'd*, 166 S.W.3d 270 (Tex. Crim. App. 2005); *see Hawkins*, 6 S.W.3d at 556.  In order to determine whether the deadly conduct alleged as a separate count is the same offense as the deadly conduct alleged as the underlying felony for felony murder, we must determine what is the "allowable unit of prosecution" for deadly conduct.  *See Saenz*, 166 S.W.3d at 274 ("Double Jeopardy Clause of the Fifth Amendment was violated when the State charged appellant with three separate counts of capital murder under Section 19.03(a)(7)(A) because the charges rely on the same three murders for each charge.")

---

[7]As noted by the Texas Court of Criminal Appeals in *Hawkins*, 6 S.W.3d at 557 n.8, *Blockburger* also addressed whether two sales of narcotics constituted a single offense.  *See Blockburger*, 284 U.S. at 302.  The United States Supreme Court concluded the sales constituted two separate offenses.  *Id*.  This principal evolved into the "allowable unit of prosecution" doctrine.  *Hawkins*, 6 S.W.3d at 557 n.8.

The Texas Legislature defines whether offenses are the same by prescribing an "allowable unit of prosecution." *Hawkins*, 6 S.W.3d at 556; *see Sanabria*, 437 U.S. at 69–70. The "allowable unit of prosecution" is "a distinguishable discrete act that is a separate violation of the statute." *Hawkins*, 6 S.W.3d at 556; *Ex parte Gonzalez*, 147 S.W.3d 474, 476 (Tex. App.—San Antonio 2004, pet. dism'd, untimely filed; pet. dism'd; pet. ref'd [3 pets.]); *Nickerson v. State*, 69 S.W.3d 661, 671 (Tex. App.—Waco 2002, pet. ref'd). The parties have not cited and our own research has not discovered any Texas cases which define the "allowable unit of prosecution" for deadly conduct.[8] The State argues the "allowable unit of prosecution" should be each victim. In support of this argument, the State directs our attention to a line of cases which hold the "allowable unit of prosecution" for an assaultive offense is each complainant. *See, e.g.*, *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006); *Haight v. State*, 103 S.W.3d 498, 503 (Tex. App.—San Antonio 2003), *rev'd*, 137 S.W.3d 48, 49 (Tex. Crim. App. 2004); *Hawkins*, 6 S.W.3d at 560. None of these cases, though, define the "allowable unit of prosecution" for deadly conduct. While the above statement is undoubtedly the general rule for assaultive offenses, there are clearly established exceptions to the general rule. *See Haight*, 137 S.W.3d at 49 (official oppression); *Mathonican v. State*, 194 S.W.3d 59, 66 (Tex. App.—Texarkana 2006, no pet.) (sexual assault); *see also Saenz*, 166

---

[8]The only case cited by the parties which addresses double jeopardy in the context of deadly conduct is *Honeycutt*, 82 S.W.3d 545. *Honeycutt*, though, did not determine what the "allowable unit of prosecution" was. *Id*.

S.W.3d at 272–73 (capital murder based on proof of killing more than one victim in same transaction may result in only one capital murder conviction).

Deadly conduct is contained in Chapter 22 of the Texas Penal Code, which deals with assaultive offenses. *See* TEX. PENAL CODE ANN. §§ 22.01–.12 (Vernon 2003 & Supp. 2007). Deadly conduct, however, differs from most assaultive offenses. Many assaultive offenses are result-oriented offenses. *See, e.g., Ex parte Smith*, 185 S.W.3d 887, 889 n.5 (Tex. Crim. App. 2006) (aggravated assault is a result-oriented offense); *cf. Villanueva v. State*, 227 S.W.3d 744, 751 (Tex. Crim. App. 2007) (murder is a result-oriented offense). Deadly conduct, though, is not a result-oriented offense; deadly conduct, rather, is a conduct-oriented offense. *Ford v. State*, 38 S.W.3d 836, 845 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd); *see Guzman v. State*, 188 S.W.3d 185, 190 n.11 (Tex. Crim. App. 2006). Unlike murder or assault, deadly conduct does not prescribe a specific result. *See Ford*, 38 S.W.3d at 845. Deadly conduct does not require a victim to be injured.

"A person commits [deadly conduct] if he knowingly discharges a firearm at or in the direction of: (1) one or more individuals . . . ." TEX. PENAL CODE ANN. § 22.05(b)(1). The statute focuses on the act of discharging a firearm, not the victim. Further, the phrase "one or more individuals" is some indication that the Legislature intended the "allowable unit of prosecution" to be each discharge of the firearm. If the "allowable unit of prosecution" was each victim, the words "or more" would be meaningless. The Legislature could have criminalized discharging a firearm at

or in the direction of "an individual" if it intended to define each independent unit of prosecution based on each victim. Instead, the Legislature chose to criminalize discharging a firearm at or in the direction of "one or more individuals." This difference is significant. If the "allowable unit of prosecution" was each victim, a defendant who fires a single shot at a crowd of a hundred persons could theoretically be charged with a hundred counts of deadly conduct. On the other hand, if the "allowable unit of prosecution" was each discharge of the firearm, the same defendant could be prosecuted for only one count of deadly conduct. We believe the legislative intent is clear from the plain language of the statute. For a defendant charged with deadly conduct under subsection (b)(1) of Section 22.05, the "allowable unit of prosecution" is each discharge of the firearm.

This conclusion is supported by the discussion in footnote three of *Honeycutt*. *See Honeycutt*, 82 S.W.3d at 549 n.3. In *Honeycutt*, the San Antonio Court of Appeals rejected the State's argument that deadly conduct was not a lesser-included offense because the evidence showed "the defendant knowingly fired at more than just the victim of the aggravated assault." *Id.* The court concluded the presence of additional individuals was not a separate and unique element. *Id.* As noted above, the court did not define the "allowable unit of prosecution" for deadly conduct. The discussion in the footnote, however, implies that the "allowable unit of prosecution" is not each victim. *See id.* *Honeycutt* is not clear concerning how many shots were fired.[9] We disagree with

---

[9]The opinion in *Honeycutt* states "Honeycutt shot his gun toward the individuals." *Honeycutt*, 82 S.W.3d at 546. Ranger Brooks Long testified he saw "a flash." *Id.* Those facts suggest that only one shot was fired. However, Honeycutt admitted to the Federal Bureau of Investigation that he had "fired 'warning shots.'" *Id.* at 546–47. The use of the plural there implies

13

*Honeycutt* to the extent it could be interpreted as holding "the allowable unit of prosecution" is not each discharge of the weapon.[10]

Because the State appears to have operated under the assumption that the "allowable unit of prosecution" was each victim, it is impossible to determine from the indictment in this case whether deadly conduct underlying the felony murder conviction is the same discrete act as the deadly conduct alleged separately. Although the indictment alleges different victims,[11] the indictment fails to specify whether the counts are based on the same or different discharges of a firearm. The evidence at trial, however, clearly establishes the counts are based on distinct acts of discharging a firearm.

The "cognate-pleadings" test prohibits inquiry into the evidence presented.[12] As mentioned above, the "allowable unit of prosecution" doctrine is distinct from the "same elements" test of

---

that more than one shot was fired.

[10]The State argues *Honeycutt* actually applied the discredited reasoning of *Grady v. Corbin*, 495 U.S. 508 (1990), *overruled by United States v. Dixon*, 509 U.S. 688. *Honeycutt*, though, does not cite *Grady* and does not appear to apply the "same conduct" test of *Grady*.

[11]If the State is correct that the "allowable unit of prosecution" is each victim, the Double Jeopardy Clause has still not been violated. The deadly conduct contained in Count II alleges different victims from the victim alleged in Count I. Therefore, Count II would be a distinguishable discrete act that is a separate violation of the statute.

[12]*Hall*, 225 S.W.3d 524; *Flores*, 245 S.W.3d 432. "*Hall* swept away a considerable body of caselaw holding that the evidence presented at trial factored into that determination. It is now clear: the evidence should not be considered in applying prong one of the test." *Horne v. State*, 228 S.W.3d 442, 447 n.6 (Tex. App.—Texarkana 2007, no pet.) (citing *Hall*, 225 S.W.3d 535–36).

14

*Blockburger*. The Texas Court of Criminal Appeals has not applied the "cognate-pleadings" approach to cases involving the "allowable unit of prosecution." When deciding whether the two narcotics sales constituted two separate offenses in *Blockburger*, the United States Supreme Court explicitly examined the evidence. *Blockburger*, 284 U.S. at 301–02. A number of Texas cases have inquired into the facts when deciding whether two convictions constituted the same "allowable unit of prosecution." *See, e.g.*, *Cavazos*, 203 S.W.3d at 337 (concluding defendant was punished multiple times for single unlawful entry); *Williams v. State*, 240 S.W.3d 293, 300 (Tex. App.—Austin 2007, no pet.) (double jeopardy violated when defendant convicted of both robbery and aggravated robbery of single victim not named in indictment); *Honeycutt*, 82 S.W.3d at 548–49. This inquiry is, by its very nature, a fact-intensive inquiry. Once we have determined the "allowable unit of prosecution" as a matter of law, we believe it is appropriate to examine the evidence in determining whether two convictions are based on the same "allowable unit of prosecution."[13]

In this case, the deadly conduct in Count II constituted an independent unit of prosecution. The evidence is clear in the current case that multiple shots were fired by Miles or by a party for

[13]Presiding Judge Keller has cautioned that inquiring into the evidence introduced at trial may resurrect the "same conduct" test of *Grady*, 495 U.S. 508, *overruled by Dixon*, 509 U.S. 688. Judge Keller stated, "[O]nce it is determined that the alleged offenses pertain to the same instance of conduct, whether they are related to each other in such a way as to be lesser and greater offenses for double jeopardy purposes is a question that does not depend in any form upon the evidence introduced at trial. To hold otherwise is to resurrect the defunct and discredited 'same evidence' test of *Grady v. Corbin*." *Girdy v. State*, 213 S.W.3d 315, 319 (Tex. Crim. App. 2006) (Keller, J., concurring) (footnotes omitted). Our inquiry into the evidence does not resurrect the "same conduct" test. We are examining the evidence to determine whether the offenses relate to the same "allowable unit of prosecution," i.e., whether the "alleged offenses pertain to the same instance of conduct."

15

whom Miles was criminally responsible. The police estimated that six to eight persons fired weapons identified as .45 caliber, .380 caliber, .40 caliber, 7.62x39 mm, and 9mm firearms. Over fifty shells were recovered at the scene. The evidence established several of the victims alleged in Count II were injured by gunfire. Officer Jeanine Nixon testified Christopher Dunn was shot in the lower right leg. Samuel Spratling testified he had been shot. Kedrick Dunn testified that James Epps fired a number of shots at him and identified a number of bullet holes in the car door behind which Kedrick was taking cover. Kinchen testified Miles had a black .45 caliber pistol in his possession previously that day. Sanders and Kinchen testified they observed Miles firing a gun. Eleven shell casings from two different .45 caliber weapons were found at the scene. Six shells were fired by one of the .45 caliber weapons and five shells were fired by the other. The bullet that killed McCowan was extracted from McCowan's body by Dr. Robert Palmer, a board certified pathologist. As such, the evidence clearly establishes that multiple shots were fired at or in the direction of Samuel Spratling, Broderick Sanders, Kedrick Dunn, or Chris Dunn that were different from the shot which killed McCowan. The act of firing at or in the direction of McCowan was a distinct discrete act from firing at or in the direction of Samuel Spratling, Broderick Sanders, Kedrick Dunn, or Chris Dunn.

The particular course of conduct engaged in by Miles, or by a co-actor for whom Miles was criminally responsible, involved multiple distinct offenses under the deadly conduct statute. The deadly conduct offense contained in Count II of the indictment was a distinct offense from the deadly conduct offense underlying the felony murder offense in Count I of the indictment. Therefore, the

16

deadly conduct allegation in Count II of the indictment is not the lesser-included offense of the felony murder allegation. The Double Jeopardy Clause was not violated. We overrule this point of error.

*(3)      The Trial Court Did Not Abuse Its Discretion in Admitting the Statement by a Co-Defendant*

Miles also argues that the trial court erred in admitting an inflammatory statement made by a co-defendant over the objection of defense counsel.[14] During the direct examination of Samuel Spratling, the State asked Spratling: "[w]as there anything said by Mr. Miles to you or any of the guys standing with you?" When Spratling responded in the negative, the State presented Spratling with a written statement he had made to Officer Nixon. After reviewing his statement, Spratling testified that Miles had asked "what's up" and "somebody replied, one of his home boys." According to Spratling, the reply was "[j]ust wanted to know who jumped my n____." Later in the examination, Spratling admitted he told Officer Nixon that Miles stated "I don't know why you approaching me like that but you approaching the wrong n____ and you are gonna get killed," but Spratling insisted he was wrong about who said the statement. Spratling testified that James Epps actually made the statement. Miles objected to the statement as hearsay and a Confrontation Clause violation, referencing "*Crawford v. Washington*." On appeal, Miles argues the statement violates the Confrontation Clause based on *Crawford v. Washington*, 541 U.S. 36 (2004).

---

[14]This is Miles' fourth point of error.

In *Crawford*, the United States Supreme Court set out a new test for challenges to out-of-court statements based on the Confrontation Clause. *See Crawford*, 541 U.S. 36. *Crawford* held that the Confrontation Clause was a procedural guarantee which commands that "reliability be assessed in a particular manner:  by testing in the crucible of cross-examination." *Id.* at 61.  The Court held that, "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required:  unavailability [of the witness] and a prior opportunity for cross-examination." *Id*. at 68.

Faced with a *Crawford* challenge, we must determine whether the statements at issue are testimonial or nontestimonial in nature. *Id.*; *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).  Testimonial hearsay statements of a person who does not appear at a defendant's trial are inadmissible unless that person was unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 68.  We review *Crawford* issues de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).  In determining whether a statement is "testimonial," we use the standard of an objectively reasonable declarant standing in the shoes of the actual declarant. *Id.* at 742–43.  The timing, purpose, and setting of a challenged statement can be relevant considerations when determining whether the statement's primary purpose is testimonial. *See Davis v. Washington*, 547 U.S. 813 (2006).

The original out-of-court statement, whether made by James Epps or Miles, was not testimonial.  Co-conspirator statements made in the furtherance of a conspiracy are nontestimonial.

18

*Crawford*, 541 U.S. at 68; *Wiggins v. State*, 152 S.W.3d 656, 659 (Tex. App.—Texarkana 2004, pet. ref'd). The statement was not made to a police officer, but to an acquaintance. An objective witness standing in the declarant's shoes would not reasonably believe that the statement would be used at a later trial. Due to the timing, purpose, and setting of a challenged statement, the original out-of-court statement, whether made by James Epps or Miles, was nontestimonial.

Miles also challenges the use of Spratling's statement to the police in which Spratling attributes the statement to Miles. At trial, Spratling denied that Miles had made the statement and testified the statement was made by James Epps. The State used Spratling's statement to the police in order to refresh Spratling's memory and as a prior inconsistent statement. Assuming, without deciding, that Spratling's statement to the police was testimonial, the use does not violate *Crawford* because Spratling testified at trial. There is no violation of the Confrontation Clause under *Crawford* when a witness actually testifies at trial. *Carter v. State*, 150 S.W.3d 230, 241 (Tex. App.—Texarkana 2004, no pet.). We overrule this point of error.

*(4)     The Evidence Is Legally and Factually Sufficient*

In six points of error, Miles challenges the legal and factual sufficiency of the evidence. In his first two points of error, Miles claims the evidence is legally and factually insufficient to support the criminal conspiracy conviction. In his remaining points of error, Miles argues the evidence is legally and factually insufficient to support the felony murder conviction.

19

In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

In a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

The charges in this case originate from a gunfight between one group of individuals, including Miles, and another group known as the "Calloway Country Crips," also known as the "Three Cs," that occurred in the parking lot of Spring Street Park in Marshall, Texas. Several days before the gunfight, Marsha "Marshay" White and Terrance "Fats" Stephenson had a physical altercation when Stephenson refused to take their child to the doctor. White testified the fight made Miles angry. Daniel Johnson and Kinchen testified Miles was involved in a fight at a club known as "Green Acres" a few days later. Kinchen testified "a couple of 3-C guys" fought with Miles and Greg Epps.

20

The next day, several individuals met at a house on North Allen Street owned by a relative of James Epps.[15] Kinchen testified that those present included himself, "James Epps, Kendrick Miles, Jerry Brightman, Stevens (sic) and Leary." (The State asserts that "Stevens" refers to Terrance Stephenson.) The individuals decided to go to the Belaire apartment complex and fight those individuals who had "jumped" Miles the night before. Kinchen testified James Epps had a "Mac-90"—an assault rifle—and Miles had a black .45 pistol.

Cedric also testified there was a meeting at the house on North Allen Street. Miles was present at the meeting. Cedric testified Miles told him they were going to Belaire and "they wanted to shoot and he was going with 'em." Although Cedric testified he did not see Miles with a gun, Cedric admitted he told the police that Miles had a handgun. Cedric testified the meeting lasted around twenty minutes and concluded around one o'clock in the afternoon.

Kinchen testified they encountered Johnson and others at the Belaire apartment complex, but decided to go someplace else to fight since the police "could get [to Belaire] fast."[16] According to Kinchen, James Epps suggested they go to Spring Street Park. Johnson testified there was "conflict"

---

[15]In its brief, the State alleges there were two meetings at the house on North Allen Street. The State asserts Kinchen testified as to a meeting "in the wee hours of the morning" and Cedric testified to a meeting concluding around one o'clock the afternoon of the gunfight at Spring Street Park. Our review of the record has not discovered where Kinchen testified as to the time of the meeting.

[16]White testified she observed Miles in a fight at the Belaire apartment complex where Daniel "Boone" Johnson resided. The record is unclear concerning whether this was the encounter testified to by Kinchen or another encounter.

at the Belaire apartment complex, but denied anyone got into a fight. Johnson testified he and his friends went to Spring Street Park, but denied there was an agreement "to go to the park and fight." Johnson testified, "[u]sually on Sunday we go to the park anyway."

Around two o'clock in the afternoon of the day after the assault, the two groups confronted each other in the parking lot of the park. Members of both sides possessed firearms. Words were exchanged and a fistfight broke out. During the fistfight, Johnson testified that Stephenson exhibited a firearm, but did not fire it. According to Johnson and Patrice White, Leary exhibited a gun, but the gun jammed. James Epps, who had a "Mac-90"—an assault rifle resembling an "SKS"—was the first person to open fire.[17] After James Epps opened fire, a number of other individuals grabbed weapons and began shooting. When the police arrived, they discovered at least five injured persons. McCowan ultimately died from his injuries. The police estimated that six to eight persons fired weapons identified as .45 caliber, .380 caliber, .40 caliber, 7.62x39 mm, and 9mm firearms.

According to Miles, the evidence is legally and factually insufficient to support the criminal conspiracy conviction. Section 15.02 of the Texas Penal Code provides in pertinent part:

---

[17]Tia Smith, James Epps' girlfriend, and Kinchen testified that Tia hit James Epps' arm when he pointed the gun, causing it to accidentally discharge. However, Marsha White testified that, while she was sitting in her car, James Epps "pulled a gun and he looked at me and I'm looking at him, and I'm like, I'm not scared of you. And all of a sudden he just fired a shot toward my car." Adarius Faggett testified that James Epps raised the gun, looked where he wanted to shoot, and started firing.

22

(a)    A person commits criminal conspiracy if, with intent that a felony be committed:

      (1)    he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and

      (2)    he or one or more of them performs an overt act in pursuance of the agreement.

(b)    An agreement constituting a conspiracy may be inferred from acts of the parties.

(c)    It is no defense to prosecution for criminal conspiracy that:

. . . .

      (5)    the object offense was actually committed.

TEX. PENAL CODE ANN. § 15.02 (Vernon 2003). In Count III of the indictment, the State alleged Miles committed criminal conspiracy by:

> with intent that Aggravated Assault, a felony, be committed, agree with Jerry Brightman, James Epps, Laddarrean Leary, and Terrance Stephenson that one of them would engage in conduct that would constitute said offense, to-wit: shooting a firearm at individuals, and James Epps performed an overt act in pursuance of said agreement, to-wit: shooting a firearm.

Since direct evidence of intent is rarely available, the existence of a conspiracy can be proven through circumstantial evidence. *See Underwood v. State*, 967 S.W.2d 925, 931 (Tex. App.—Beaumont 1998, pet. ref'd); *see also Farrington v. State*, 489 S.W.2d 607 (Tex. Crim. App. 1972). The State introduced sufficient evidence for a rational juror to conclude a criminal conspiracy had formed. After the fight at the Green Acres Club, several members of Miles' "side" met at a

23

house on North Allen Street. Kinchen testified that those present included himself, "James Epps, Kendrick Miles, Jerry Brightman, Stevens (sic) and Leary." Guns were present at the meeting. The individuals decided to go to the Belaire apartment complex and fight those individuals who had "jumped" Miles the night before. Cedric testified Miles told him they were going to Belaire and "they wanted to shoot and he was going with 'em." Multiple witnesses testified that James Epps was the first person to open fire at the park.

A rational juror could have concluded beyond a reasonable doubt from the above evidence that Miles, with the intent that aggravated assault be committed, agreed with one or more persons that one of them would commit aggravated assault and that James Epps performed an overt act in furtherance of that agreement.

In conducting a factual sufficiency review, we must consider the evidence that, according to the appellant, most undermines confidence in the jury's verdict. *Curiel v. State*, 243 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *see Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Miles directs us to the testimony of a number of individuals who testified they believed the fight would involve only hand-to-hand combat, not guns. Miles also points to evidence, that the parties had to retrieve guns from their vehicles after the fighting started, as support for the belief that the fight would not involve guns. Miles argues, if there was a conspiracy, the conspiracy was not to commit aggravated assault. Adarius Faggett, Kedrick Dunn, Daniel Johnson, and Miguel Kinchen testified they understood the altercation would be only a fistfight. However, according to Kinchen's

testimony, none of these witnesses, with the exception of Kinchen, was present at the above meeting. Miles also directs this Court's attention to Kinchen's testimony that the State reduced a robbery charge pending against him to a misdemeanor possession of a firearm charge in exchange for his testimony. "The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). In resolving conflicts in the evidence, a jury "may accept one version of facts and reject another or reject any of a witness' testimony." *Baker v. State*, 986 S.W.2d 271, 276 (Tex. App.—Texarkana 1998, pet. ref'd). The evidence is not so weak or so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. The evidence of criminal conspiracy is legally and factually sufficient.

In addition, Miles argues the evidence is legally and factually insufficient to support his conviction for felony murder. Miles claims there is no evidence that Miles intentionally solicited, encouraged, directed, aided, or attempted to aid another person to discharge a firearm at one or more individuals. Miles also argues no evidence of the requisite intent. In its brief, the State concedes that there was "no evidence as to which shooter actually killed the victim" and the law of parties "is the only avenue available for a determination of criminal responsibility." Since the State limits its theory of responsibility to the law of parties, we will not discuss whether the evidence is sufficient to convict Miles as a principal.

25

The first step in our analysis is to determine whether there is sufficient evidence that the law of parties applies. A person is criminally responsible as a party to an offense if the offense is committed by the conduct of another for which he or she is criminally responsible. TEX. PENAL CODE ANN. § 7.01(a) (Vernon 2003). In *Rosillo*, the appellant was one of several men who entered a bar while armed. 953 S.W.2d at 812–14. Inside the bar, multiple gunshots were fired in rapid succession, but no one actually saw who shot the deceased. *Id*. The Corpus Christi Court of Appeals held the evidence was sufficient under the law of parties. *Id*.

Like *Rosillo*, here there is overwhelming evidence that Miles was a party to the murder even though the police were unable to determine who fired the fatal round. The meeting at North Allen Street discussed above is evidence that Miles solicited, encouraged, directed, aided, or attempted to aid another person to discharge a firearm at one or more individuals. During the fight, there is considerable evidence that Miles was an active participant. Keith Moore testified Miles had a handgun during the gunfight. Johnson and Patrice White testified that Miles had a handgun which he pointed at various individuals. Sanders and Kinchen testified they observed Miles firing a gun. Eleven shell casings from two different .45 caliber weapons were found at the scene.[18] Six shells were fired by one of the .45 caliber weapons and five shells were fired by the other. A reasonable inference from the evidence would be that Miles encouraged or aided in the commission of the

_____

[18]Neither .45 caliber firearm was discovered by the authorities. The police recovered a .45 caliber pistol from Stephenson's car during a traffic stop. None of the eleven shells were fired by this .45 caliber pistol.

26

offense by being an active participant in the gunfight. After the fight, Miles admitted to Cedric they "got into it at the park." The evidence was sufficient for a rational juror to have concluded, beyond a reasonable doubt, that Miles solicited, encouraged, directed, aided, or attempted to aid another person to discharge a firearm at one or more individuals.

Miles presented several witnesses who testified he did not have a gun. Tameka Howard and Delvin Wilson testified that they saw Miles running across the parking lot after shots had been fired and that Miles did not have a gun. Patrice Jackson testified that she observed Miles squatting behind a car during the gunfight and that he did not have a gun. Gwendolyn Miles, Miles' mother, testified that she was able to observe Miles during the entire gunfight and that he did not have a gun. If the jury found the testimony of these witnesses credible, the jury still could have found Miles solicited, encouraged, or directed others in the meeting prior to the fight at Spring Street Park. The jury was also entitled to reject the testimony of these witnesses. Viewed in a neutral light, the jury's conclusion is not so against the great weight and preponderance of the evidence as to be clearly wrong or unjust.

In the alternative, Miles claims there is no evidence he possessed the required intent to aid or encourage the others to shoot. With the exception of James Epps, Miles claims all of the participants were shooting in self-defense.[19] The Texas Court of Criminal Appeals has held that "Section 19.02(b)(3) plainly dispenses with a culpable mental state." *Lomax v. State*, 233 S.W.3d

---

[19]Miles did not request an instruction on self-defense or argue at trial that he acted in self-defense.

302, 305 (Tex. Crim. App. 2007) (concluding felony driving while intoxicated could be the underlying felony for felony murder). According to Miles, there was insufficient time for him to form the required intent. There is ample evidence that Miles possessed sufficient intent, under the law of parties, to commit deadly conduct, the felony underlying the felony murder conviction. There is no requirement that the intent be premeditated or formulated prior to the commission of the underlying felony. The evidence supporting the jury's conclusion that Miles was guilty of felony murder is legally and factually sufficient.

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice


Date Submitted:     February 8, 2008
Date Decided:       June 3, 2008

Publish