In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00025-CR


______________________________




APRIL SUZANNE RHOTEN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 241st Judicial District Court


Smith County, Texas


Trial Court No. 241-0768-08




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



I. Factual and Procedural History 


 After trial by jury, April Suzanne Rhoten was convicted of conspiracy to commit murder and
sentenced to eighteen years' imprisonment. Rhoten's sister, Amber Rhoten, discovered text messages
on Rhoten's cell phone indicating Rhoten's intention to kill their father. Amber alerted the police,
who investigated the matter and interviewed Rhoten on two separate occasions. During police
questioning, Rhoten confessed to agreeing with James Perkins to kill her father and to planning the
murder through telephone calls and text messages with Perkins. Before and throughout the
guilt/innocence phase of the trial, Rhoten sought to offer expert and lay testimony of her mental
retardation to contest that she had the requisite mens rea to commit conspiracy to commit murder. 
The trial court excluded the evidence under Texas Rule of Evidence 403.

 On appeal, (1) Rhoten argues that: 1) the evidence supporting the judgment was legally and
factually insufficient; 2) the trial court erred by excluding evidence of her mental retardation during
the guilt/innocence phase of the trial; and 3) the judgment erroneously indicates Rhoten pled guilty. 
 We reform the judgment and affirm because: 1) the evidence was legally and factually
sufficient to prove the existence of a criminal conspiracy to commit murder; 2) Rhoten failed to
preserve error regarding the exclusion of mental impairment evidence; and 3) Rhoten pled "not
guilty." 

II. Legal and Factual Sufficiency 

 The indictment against Rhoten alleges that

with the intent that murder . . . be committed, agreed with James Perkins that one of
them would engage in conduct that would constitute said offense, and said defendant
and April Rhoten performed an overt act in pursuance of said agreement, to wit: by
sending of text messages agreeing to commit the murder. 

In her first point of error, Rhoten argues the evidence supporting her conviction was legally and
factually insufficient to prove: 1) the existence of an agreement to commit a felony, and 2) she or
Perkins committed an overt act in pursuance of the agreement. (2) We disagree. 

 A. Standard of Review 

 In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most
favorable to the prosecution and determine whether, based on that evidence and reasonable inferences
therefrom, any rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Laster v. State, 275 S.W.3d 512, 517-18 (Tex. Crim. App. 2009); Roberts v. State,
273 S.W.3d 322 (Tex. Crim. App. 2008); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

 In a factual sufficiency review, we review all the evidence, but do so in a neutral light instead
of the light most favorable to the verdict. We determine whether the evidence supporting the verdict
is either too weak to support the fact-finder's verdict, or, considering conflicting evidence, is so
outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly
wrong and manifestly unjust. Laster, 275 S.W.3d at 518-19; Lancon v. State, 253 S.W.3d 699, 705
(Tex. Crim. App. 2008); Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Marshall
v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); Watson v. State, 204 S.W.3d 404, 414-15
(Tex. Crim. App. 2006); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). 

 In this analysis, we use a hypothetically correct jury charge to evaluate both the legal and
factual sufficiency of the evidence. Grotti v. State, 273 S.W.3d 273 (Tex. Crim. App. 2008). Such
a charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase
the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately
describes the particular offense for which the defendant was tried. Villarreal v. State, 286 S.W.3d
321 (Tex. Crim. App. 2009); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

 A person commits the offense of criminal conspiracy if, with the intent that a
felony be committed, he or she agrees with one or more persons that they or one or
more of them engage in conduct constituting the felony and he or she or one or more
of them performs an overt act in pursuance of the agreement. 


Tex. Penal Code Ann. § 15.02(a) (Vernon 2003). Since direct evidence of intent is rarely available,
the existence of a conspiracy can be proven through circumstantial evidence. Miles v. State, 259
S.W.3d 240 (Tex. App.--Texarkana 2008, pet. ref'd); see Underwood v. State, 967 S.W.2d 925, 931
(Tex. App.--Beaumont 1998, pet. ref'd); see also Farrington v. State, 489 S.W.2d 607 (Tex. Crim.
App. 1972).

 B. Existence of a Conspiracy Analysis 

 Rhoten and Perkins worked together at Goodwill Industries. Heather Goggans, a manager at
Goodwill Industries, contacted Amber to report that she would be suspending Rhoten and Perkins for
embracing on the job. To punish her for this conduct, Amber took Rhoten's cell phone. When
inspecting that phone, Amber saw a text message to Perkins asking, "When do you plan on killing
my dad?" Investigator Matthew Smyser photographed text messages sent between Rhoten's cell
phone and Perkins' cell phone, stating "get money," "priority high," and "plan way to kill my father." 
When Detective Dennis Matthews interviewed Rhoten, she stated that she wanted to kill her father,
that Perkins agreed to help her commit the murder, and that they planned the murder via telephone
calls and text messages. 

 As to Perkins' involvement in this plot, a note from Rhoten to Perkins was found in Perkins'
room entitled "Tips on how to act like nothing happened" and another note listing:

DNA; relationship; proximity; type of crime; timing; early morning hours or daytime;
tools; alibi; get away; thick gloves; wait at least one month to buy supplies for
murder; to hotel with no cameras; don't watch the news and avoid newspapers; to
funeral; act sad have remorse; rent a car; act like you're crying; get rid of the body;
act like nothing happened; don't talk to nobody; avoid the cops; don't talk to family;
be happy; go back to the scene of the crime, get your stuff and leave; go to hotel. 


 Perkins' grandfather searched Perkins' bedroom and found other notes from Megan, who was
identified as Rhoten, discussing tips on "how to kill my dad" and "Baby I can't believe we are going
to do it." Rhoten had explained to the investigating officers that Perkins was "okay" with the plan
to kill her father and told her he would assist her. According to Rhoten's statement, they were going
to "get a knife, [and] go in his bedroom while he was sleeping" to kill her father. 

 Rhoten shared an apartment with her father. In Rhoten's bedroom, one of her father's knives
(a switchblade) was found hidden in her jewelry box. Rhoten also photographed her father while he
slept, and sent the photograph, via telephone, to Perkins, so Perkins could identify him at the time of
the murder. 

 In Butler v. State, the court of appeals upheld a conviction for conspiracy to commit murder
and noted that the overt actions in furtherance of the agreement consisted of: 1) the defendant
soliciting the aid of others in committing the murder; 2) the defendant providing his co-conspirators
with weapons to be used in the murder; 3) the defendant familiarizing the co-conspirators with the
potential victim's house and premises; 4) the co-conspirators discussing different methods of
committing the murder, as well as different methods of altering the appearance of a vehicle so that
it could not be identified; and 5) the defendant paying his co-conspirators an advance payment for the
murder. 758 S.W.2d 856, 860 (Tex. App.--Houston [14th Dist.] 1988, no pet.). 

 A hypothetically correct jury charge required the State to prove that Rhoten agreed with
Perkins to engage in conduct that would constitute the offense of murder and that one or more of them
performed an overt act in pursuance of the agreement. Even though the indictment alleged the overt
act was the sending of text messages agreeing to the murder, the State proved, without objection,
other overt acts which would satisfy the proof requirement. A rational jury could have concluded
beyond a reasonable doubt from the above evidence that Rhoten, with the intent that murder be
committed, agreed with Perkins that one of them would commit murder, that Rhoten committed overt
acts in pursuance of such agreement by obtaining and secreting the switchblade knife for use in the
murder, and that Rhoten photographed her father and sent the photograph to Perkins so Perkins could
identify Rhoten's father when the murder was carried out. Further, there is evidence that they
discussed and planned different methods of escaping suspicion and punishment for the crime. The
evidence was legally sufficient to support the jury's verdict. 

 In conducting a factual sufficiency review, we must consider the evidence that, according to
the appellant, most undermines confidence in the jury's verdict. Curiel v. State, 243 S.W.3d 10, 16
(Tex. App.--Houston [1st Dist.] 2007, pet. ref'd); see Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim.
App. 2003). Rhoten wrote several notes about how to behave after the murder and how to avoid
suspicion, including one note addressed to Perkins that said "on the computer I found tips on how to
kill my dad [and] 2 things that it said avoid the news and avoid the newspapers and the press . . . I
can't believe we are actually going to do it." (3) Rhoten points out that Smyser was unaware of whether
Perkins had ever received or read these notes. Rhoten also directs us to evidence that Perkins knew
of Rhoten's plot to kill her father, and that while there is evidence that Rhoten asked Perkins to kill
her father, there is no evidence that Perkins responded in any way. 

 "The jury is the exclusive judge of the credibility of witnesses and of the weight to be given
testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence."
Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). In resolving conflicts in the
evidence, a jury "may accept one version of facts and reject another or reject any of a witness'
testimony." Baker v. State, 986 S.W.2d 271, 276 (Tex. App.--Texarkana 1998, pet. ref'd). Here, the
evidence in this case is not so weak or so outweighed by the great weight and preponderance of the
evidence that the jury's verdict is clearly wrong or manifestly unjust. The evidence of criminal
conspiracy is legally and factually sufficient, and we overrule Rhoten's first point of error.

III. Preservation of Error--Exclusion of Mental Impairment Evidence


 In her second point of error, Rhoten argues that the trial court abused its discretion by
preventing her from presenting evidence of her mental retardation during the guilt/innocence phase
of the trial. We find Rhoten failed to preserve error regarding exclusion of the mental retardation
evidence. 

 In order to preserve error regarding a trial court's decision to exclude evidence, the
complaining party must comply with Rule of Evidence 103 by making an "offer of proof" which sets
forth the substance of the proffered evidence. Tex. R. Evid. 103(a)(2). Rule 103(a)(2) provides,
"Error may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of
the party is affected, and . . . the substance of the evidence was made known to the court by offer, or
was apparent from the context within which questions were asked." The offer of proof may consist
of a concise statement by counsel, or it may be in question-and-answer form. Warner v. State, 969
S.W.2d 1, 2 (Tex. Crim. App. 1998). If in the form of a statement, the proffer "must include a
reasonably specific summary of the evidence offered and must state the relevance of the evidence
unless the relevance is apparent, so that the court can determine whether the evidence is relevant and
admissible." Id. 

 "The primary purpose of an offer of proof is to enable an appellate court to determine whether
the exclusion was erroneous and harmful. A secondary purpose is to permit the trial judge to
reconsider his ruling in light of the actual evidence." Mays v. State, 285 S.W.3d 884 (Tex. Crim.
App. 2009) (quoting Steven Goode, Olin Guy Wellborn, III & M. Michael Sharlot, 1 Texas
Practice-Guide to the Texas Rules of Evidence: Civil and Criminal § 103.3 (1993)).

 The Texas Court of Criminal Appeals' decision in Mays is instructive because it was
predicated on a similar set of circumstances. During voir dire, the defendant sought to show detailed
slides about mental impairment to the jury panel and ask questions in regard thereto. Id. at 886. The
defendant also stated his intention to offer evidence of mental impairment during the guilt/innocence
phase, to show the defendant lacked the capacity to form the necessary mens rea. Id. at 886. The
defendant proffered to the court the slides, and the questions he anticipated asking the jury panel, for
consideration of admissibility. (4) Id. at 886-87. Relying on Jackson v. State, 160 S.W.3d 568 (Tex.
Crim. App. 2005), the trial court acknowledged that Texas does not recognize an affirmative defense
of diminished capacity, and made a broad ruling, excluding from voir dire and the guilt/innocence
phase all evidence of mental impairment, no matter the content of the evidence. (5) See Mays, 285
S.W.3d at 886-87.

 During the guilt/innocence phase, the defendant explicitly relied on the court's blanket
exclusion of all mental impairment and diminished capacity evidence, and did not call his anticipated
expert or other witnesses to testify regarding his mental impairment or otherwise enter the substance
of their testimony into the record. (6) Id. at 887-88, 890-91. The defendant explained on the record
that: 

The evidence in this case, were we allowed to present it, would show that because
of mental and medical impairment, the defendant lacked, at the time of the alleged
commissions of this crime, the ability to form the requisites of the mental state
required . . . .


Id. at 886. 

 The Texas Court of Criminal Appeals noted that "this sort of summary, in the most general
and cursory terms, without any of the meat of the actual evidence will not suffice to preserve error."
Id. at 891. In order to preserve the issue for appeal, the defendantwas required to proffer, with some degree of specificity, the substantive evidence he
intended to present, during the guilt phase, of the appellant's mental impairments and
their impact on his mental state at the time of the offense.


Id. at 890. The court held that the defendant failed to preserve error and noted that it is the
proponent's burden to ensure that the substance of the mental impairment evidence was placed into
the record and that the trial court's blanket ruling excluding the evidence did not relieve the defendant
of that burden. Id.

 In this case, in order to rebut or negate mens rea, (7) Rhoten sought to offer expert and lay
witness testimony that she suffered from a mental impairment (mental retardation), and therefore
"lacked the ability to specifically intend to enter into a conspiracy to commit a felony." (8) Outside the
presence or hearing of the jury, the trial court stated that it wanted to hear the proffered mental
impairment testimony from the expert and other witnesses before ruling on its admissibility. 
However, no such testimony or proffer of evidence is reflected in the record. After hearing the
arguments of counsel regarding the admissibility of the mental impairment evidence, the trial court
held that:The Court's ruling at this time is the evidence of diminished capacity or what
[Appellant's attorney] has described as mental retardation, the Court not having
heard the testimony of the expert, evidence of any type diminished capacity or
evidence of any type of mental retardation in the guilt phase of the trial at this time,
the Court is going to rule that under the [Rule 403] balancing test, the Court is going
to find that the probative value of the evidence of mental retardation or diminished
capacity is substantially outweighed by the danger of unfair prejudice, confusion of
the issues, or misleading to the jury.


Therefore, my ruling at this time is that evidence of diminished capacity or mental
retardation is not admissible in the guilt phase of this trial under the Jackson [v.
State,160 S.W.3d 568 (Tex. Crim. App. 2005)] case. 


(Emphasis added.) During the trial, witnesses were questioned in a manner that strayed onto the issue
of mental retardation; the trial court repeatedly noted that it had conducted the Rule 403 balancing
test and that the evidence of mental impairment was inadmissible thereunder. 

 At the conclusion of the evidence, Rhoten stated that

[his expert] was going to talk that he did tests or evaluated my client, that she is
mentally retarded. And I was going to get into the evidence of her mental retardation.
. . . Also I was going to call Dennis Rhoten . . . who's [Rhoten's] father, that she was
in special classes, that she was mentally retarded, and things of that nature. . . . Also
I was going to call Angela Holcomb . . . [s]he is going to testify also that [Rhoten]
is mentally retarded and things of that nature . . . . (9), (10)


Like the defendant in Mays, rather than call her witnesses and have their excluded testimony entered
into the record, Rhoten relied on the trial court's broad ruling excluding all mental impairment or
other diminished capacity evidence. Rhoten's summary statement of the excluded evidence was in
the same general and cursory terms held to be insufficient by Mays. 285 S.W.3d at 891. There is no
evidence in the record of Rhoten's specific mental impairments or their impact on her mental state
at the time of the offense, thereby failing to meet the requirements of Texas Rule of Evidence 103. 
Therefore, Rhoten failed to preserve the issue for our review, and Rhoten's second point of error is
overruled.

IV. Rhoten Pled "Not Guilty"

 In her third point of error, Rhoten contends the judgment should be reformed to reflect her
plea of "not guilty." We agree.

 We have the authority to reform the judgment to make the record speak the truth when the
matter has been called to our attention by any source. French v. State, 830 S.W.2d 607, 609 (Tex.
Crim. App. 1992). Our authority to reform incorrect judgments is not dependent on the request of
any party, nor does it turn on a question of whether a party has or has not objected in trial court; we
may act sua sponte and may have a duty to do so. Asberry v. State, 813 S.W.2d 526, 531 (Tex.
App.--Dallas 1991, pet. ref'd); see French, 830 S.W.2d at 609. The Texas Rules of Appellate
Procedure also provide direct authority for this Court to modify the trial court's judgment. Tex. R.
App. P. 43.2.

 Here, the judgment incorrectly indicates that Rhoten pled "guilty" to the alleged offense. 
However, the record makes clear that Rhoten pled "not guilty" and elected to have her case submitted
to a jury. Accordingly, we reform the judgment to reflect Rhoten's plea of "not guilty" to the offense
charged. As reformed, we affirm the judgment of the trial court. 


 Jack Carter

 Justice


Date Submitted: September 18, 2009

Date Decided: October 16, 2009


Publish
1. Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court
by the Texas Supreme Court pursuant to its docket equalization efforts. See Tex. Gov't Code Ann. 

§ 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court
of Appeals and that of this Court on any relevant issue. See Tex. R. App. P. 41.3.
2. Rhoten contends the indictment is defective, in that it is "on its face, legally insufficient
[because] the overt act must be something more than simply making an agreement." We note that
Rhoten failed to file a motion to quash or otherwise object to the indictment at trial, and therefore,
failed to preserve error with regard to any defects in the indictment. See Tex. Code Crim. Proc.
Ann. art. 1.14(b) (Vernon 2005). 
3. These notes and letters are from a "Megan." Matthews testified, without objection, that
"Megan" is, in fact, Rhoten. 
4. The defendant offered the slides as exhibits, and the court admitted them for the record.
5. The trial court "also excluded the evidence because of prejudice, irrelevance, and confusion
to the jury." Mays, 285 S.W.3d at 887. We note the defendant's question of "how could we know
if that evidence would be more prejudicial than probative when we haven't even had a chance to see
what that evidence is." Id. at 891.
6. The trial court agreed with the defendant that calling his expert and other witnesses to testify
regarding mental impairment was unnecessary because of its broad ruling excluding all such
evidence. See Mays, 285 S.W.3d at 891.
7. Rhoten was held to be competent for trial. 
8. The incapacity to form a requisite criminal intent due to mental disease or defect is
"insanity." Thomas v. State, 886 S.W.2d 388 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd). 
Insanity is the only "diminished capacity" defense to criminal responsibility in Texas. Jackson, 160
S.W.3d at 573. "Texas does not recognize diminished capacity as an affirmative defense, i.e., a
lesser form of the defense of insanity." Id. at 573. 

 Here, at trial, without objection from Rhoten, the State and the trial court referred to the
purpose of the evidence as "diminished capacity." Rhoten did not explicitly state the purpose of the
evidence at trial; however, it is apparent from the record that she sought to introduce the evidence
to rebut or negate mens rea. 
9. In a bill of exception, Matthews testified that Rhoten's father told him she was mildly
retarded and that he and the other officers investigating this case were informed that Rhoten was
mentally retarded. 
10. Rhoten's proffered expert conducted Rhoten's competency evaluation and concluded that
Rhoten was mildly retarded but competent to stand trial and was fully aware that her conduct was
wrong.