PD-1155-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/2/2015 10:18:40 PM
Accepted 9/8/2015 12:44:37 PM
ABEL ACOSTA
CLERK

NO. _____

TO THE COURT OF CRIMINAL APPEALS OF TEXAS

FILED IN
COURT OF CRIMINAL APPEALS

September 8, 2015

ABEL ACOSTA, CLERK

**Thomas Ramirez, Jr., Appellant**
**v.**
**The State of Texas, Appellee**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

FROM THE COURT OF APPEALS

SECOND APPELLATE DISTRICT OF TEXAS

FORT WORTH, TEXAS

NO. 02-13-00540-CR

TARRANT COUNTY
TRIAL COURT NO. 1260933R

Brian K. Walker
STATE BAR # 24043978
222 W. Exchange Avenue
Fort Worth, TX 76164
(817) 625-2233 PHONE
(817) 887-5981 FACSIMILE
brian@walkerattorneys.com
Attorney for Appellant

**ORAL ARGUMENT NOT REQUESTED**

## TABLE OF CONTENTS

                                                    PAGE

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . 2

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . 3

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . 3

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . 4

STATEMENT OF THE CASE . . . . . . . . . . . . . . . 5

STATEMENT OF PROCEDURAL HISTORY OF THE CASE . . . 5

QUESTIONS PRESENTED FOR REVIEW. . . . . . . . . . . 6

ARGUMENT (LESSER INCLUDED OFFENSE) . . . . . . . . 7

PRAYER . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . 18

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . 18

# INDEX OF AUTHORITIES

## CASES

*Daniels v. State*,
    313 S.W.3d 429, 432
    (Tex. App. – Waco 2010, pet. ref'd) . . . . . 9

*Flores v. State*,
    245 S.W.3d 432 (Tex. Crim. App. 2008) . . . . 9

*Hall v. State,*
    225 S.W.3d 524
    (Tex. Crim. App. 2007) . . . . . . . 7, 8, 9, 10

*Miles v. State*,
    259 S.W.3d 240, 247
    (Tex. App. – Texarkana 2008, pet. ref'd.) . . 9

## STATUTES

*Tex. Pen. Code Ann.,*
    § 22.05 (Vernon 2011). . . . . . . . . . 29, 30

## STATEMENT REQUESTING ORAL ARGUMENT

Oral argument is not requested.

## IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties, as well as the names and addresses of all counsel.

| | |
|---|---|
| Appellant: | Thomas Ramirez, Jr. |
| Trial Counsel | Brian Salvant<br>Attorney at Law<br>610 E. Weatherford St.<br>Fort Worth, Texas 76102 |
| Appellate Attorney for Appellant | Brian K. Walker<br>Attorney at Law<br>222 W. Exchange Ave.<br>Fort Worth, Texas 76164 |
| Appellee | The State of Texas |
| Trial Attorneys for Appellee | Robert Huseman<br>Allenna Bangs<br>Tarrant County Assistant<br>District Attorney<br>401 W. Belknap<br>Fort Worth, Texas 76196 |
| Appellate Attorney for Appellee | Charles M. Mallin<br>Assistant Tarrant County<br>District Attorney<br>401 W. Belknap<br>Fort Worth, Texas 76196 |
| Trial Judge | Honorable Everett Young<br>297th District Court<br>Tarrant County, Texas |

All references to Texas statutes, rules, etc. are references to the latest edition published by West Publishing Company, unless otherwise indicated.

THOMAS RAMIREZ, JR.,

Appellant-Applying for Review

V.

THE STATE OF TEXAS,

Appellee

**\*\*\*\*\*\*\*\*\*\*\*\***

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

**\*\*\*\*\*\*\*\*\*\*\*\***

TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:

## STATEMENT OF THE CASE

This appeal has resulted from appellant's conviction for murder.  (*C.R.* Vol. 1, p. 133). Appellant proceeded to jury trial on Tuesday, October 22nd.  (*R.R.* Vol. 1, p. 3).  After four days of trial on guilt/innocence, both sides rested and closed.  (*R.R.* Vol. 7, p. 43).  The jury found appellant guilty on one count of felony murder on Friday, October 25th.  Appellant's trial on punishment took place the following Monday, October

28th. (*R.R.* Vol. 1, p. 3). The jury assessed a sentence of life in the Texas Department of Criminal Justice – Institutional Division. (*R.R.* Vol. 8, p. 150).

## STATEMENT OF PROCEDURAL HISTORY OF THE CASE

The Court of Appeals rendered its decision and delivered its written non-published opinion on August 6, 2015. The deadline for filing a Petition for Discretionary Review is September 5, 2015.

## QUESTIONS PRESENTED FOR REVIEW

The trial court erred by denying appellant's request for a lesser-included offense instruction for deadly conduct. There was ample evidence that appellant may have been only guilty of that offense. Did the Court of Appeals (COA) err by overruling this this issue and finding that "if the jury found Appellant had engaged in the deadly conduct, the lesser-included offense, it had no rational basis for acquitting Appellant of the greater offense of felony murder." (Appeals Court Opinion p. 17)?

## ARGUMENT

During the jury charge conference, appellant moved the court to include a question pertaining to the lesser-included offense of deadly conduct. (R.R., Vol. 7, p. 45). Apparently a discussion took place off the record in chambers so there is no record why the State objected to the inclusion of the deadly conduct lesser-included offense instruction and there is no record why the trial judge denied appellant's request. (*R.R.,* Vol. 7, p. 46). *Hall v. State* is the controlling authority in Texas on whether or not an offense constitutes an actual lesser-included offense and whether or not a court is required to charge a jury on a particular lesser-included offense. See also *Hall v. State,* 225 S.W.3d 524 (Tex. Crim. App. 2007). According to *Hall*, there is a two-part test in determining whether or not a lesser-included offense instruction is necessary. The first step is to determine whether or not the proferred lesser offense is in fact a lesser-included offense by

comparing the elements of the greater offense, as pled in the indictment, with the elements in the lesser offense as found in the penal code statute. See *Hall v. State,* 225 S.W.3d at 535, (adopting the "pleadings approach" or "cognate-pleadings approach" as "the sole test for determining in the first-step whether a party may be entitled to a lesser-included-offense instruction".) The second step is to determine whether there is evidence "adduced at trial" that supports giving the instruction by asking whether there is "some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense." *Hall* goes on to say that "anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge." *Hall v. State,* 225 S.W.3d at 536. Courts have found that deadly conduct can be a lesser-included offense for various theories of murder. In fact, this honorable court has found that deadly conduct can be a lesser-included offense for capital murder

8

while applying the "cognate-pleadings approach" mentioned above. *Flores v. State*, 245 S.W.3d 432 (Tex. Crim. App. 2008). Courts applying the "cognate-pleadings approach" have also found that deadly conduct is a lesser included offense for felony murder. *See Daniels v. State*, 313 S.W.3d 429, 432 (Tex. App. – Waco 2010, pet. ref'd); *Miles v. State*, 259 S.W.3d 240, 247 (Tex. App. – Texarkana 2008, pet. ref'd.). However, it is still incumbent to analyze this particular case through a *Hall* "cognate-pleadings test". In order to meet the first step of *Hall*, an element-by-element analysis must be conducted by first setting out what was actually asserted in the indictment and then comparing what elements are found in the lesser offense statute. The theory of felony murder in which Appellant was ultimately convicted can be found in Count One of the indictment handed down by the grand jury. That reads that Thomas Ramirez, Jr. did "then and there intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, namely, discharge

9

a firearm at or in the direction of a habitation or building, which caused the death of Ivan Daniel Valenzuela, and the said Defendant was then and there in the course of or immediate flight from the commission or attempted commission of a felony, to-wit: Unlawful Possession of a Firearm by a Felon." (C.R., Vol. 1, p. 11). Under Texas Penal Code § 22.05, there are two types of deadly conduct. The misdemeanor variation lists the elements as being that "a person commits an offense if he recklessly engages in conduct that places another in imminent dangerous of serious bodily injury". The third-degree felony variation lists the elements as being that "a person commits an offense if he knowingly discharges a firearm at or in the direction of: one or more individuals; or a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied." *Tex. Penal Code. Sec.* 22.05. Counsel did not specify which he was requesting but one can clearly assume that he was referencing the third-degree felony variation. (*R.R.*, Vol. 7, p. 45). It would

10

also be a logical assumption that this variation of deadly conduct would have been the indicted offense if appellant had not had a felony record. Applying the element by element analysis there is no question that the first part of the *Hall* test is met. The COA also assumed for purposes of their analysis "that Appellant met the first prong." (Appeals Court Opinion P. 16). Count One of the indictment was basically a deadly conduct charge of the third-degree felony variation with the additional language pertaining to unlawful possession of a firearm by a felon. The trial court should have instructed the jury on deadly conduct because the second part of *Hall* jurisprudence was met as well. In order for the second test to be met, the trial court only had to find *some* evidence in the record that would permit the jury to rationally find that if the defendant was guilty, he was only guilty of the third-degree variation of deadly conduct. Again, the third-degree variation of deadly conduct pertains to instances where an actor discharges a firearm in

11

the direction of a habitation.  The jury obviously believed that Appellant was driving through the neighborhood shooting a pistol, and they could have rationally found that if appellant was guilty of something, it was only the lesser-included offense of deadly conduct.  After all, there is lacking proof that appellant actually caused the death of Ivan Valenzuela.  This is presumably the reason the State did not want the instruction made a part of the charge, because they were afraid that the jury might find appellant guilty of only deadly conduct. The COA, however, found that "if the jury found Appellant had engaged in the deadly conduct, the lesser-included offense, it had no rational basis for acquitting Appellant of the greater offense of felony murder." (Appeals Court Opinion p. 17). However, this is illogical.  In fact, there was evidence presented at trial that no firearm was ever found and no actual ballistics testing could be done to show a correlation between the bullet that killed Ivan Venezuela and a firearm possessed and/or allegedly used by appellant.  (*R.R.* Vol. 6,

12

p. 120).  Furthermore, at least one .25 caliber shell casing was found in the street in front of the victim's apartment that differed from the .40 caliber shell casings that were found in greater number which tends to show that other actors had been shooting in the area.  (*R.R.* Vol. 5, p. 102). Also, the testifying coroner testified that the bullet traveled "slightly downward" from left to right toward the back of the victim's head. (*R.R.* Vol. 6, p. 142).  It would be seemingly impossible for a bullet shot from a vehicle in the street to travel through the air up to a second story apartment and to then change course in a downward direction just before, or just after, it entered the victim's head.  All of these things could lead a factfinder to believe that Appellant was only guilty of deadly conduct but not necessarily felony murder.  The jury could have easily concluded that Appellant was driving around shooting aimlessly in the air but someone else had shot and killed Ivan Venezuela.

For those reasons, and all of the reasons above, the trial court erred by denying appellant's request for a permissible instruction on the lesser-included offense of deadly conduct and the COA erred by not overturning on this issue. The COA also opined that "there was not a scintilla of evidence that Ivan's death was caused by anything other than Appellant's discharging a firearm while being a felon in possession of a firearm. (Appeals Court Opinion P. 18). This makes no sense taking into consideration the angle of the trajectory, the various types of shell casings found in the area, and the lack of connecting ballistics in the case.

PRAYER

WHEREFORE, PREMISES CONSIDERED, THOMAS RAMIREZ, JR., Appellant, prays that this Petition for Discretionary Review be granted; that this case be submitted to the Court; that the Court of Appeals' decision be reversed and for such other relief for which he shows himself entitled.

14

Respectfully Submitted,

/s/ Brian K. Walker
By: BRIAN K. WALKER
222 W. Exchange Ave.
Fort Worth, Texas 76164
(817) 625-2233 Phone
(817) 887-5981 Fax
Attorney for Appellant
brian@walkerattorneys.com

## CERTIFICATE OF SERVICE

A copy of this petition was served by first class mail to the Office of Criminal District Attorney, Tarrant County Courthouse, 401 W. Belknap, Fort Worth, Texas 76196 and to the State Prosecuting Attorney at P.O. Box 12405, Austin, Texas 78711 on the 2nd day of September, 2015.

/s/ Brian K. Walker
BRIAN K. WALKER

## CERTIFICATE OF COMPLIANCE

I certify that this document copmplies with the length requirements as set forth by the Texas Rules of Appellate Procedure in that this document contains 2183 words, and that the document is in 14 point type.

/s/ Brian K. Walker
BRIAN K. WALKER



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00540-CR

| | | |
|---|---|---|
| Thomas Ramirez, Jr. | § | From the 297th District Court |
| | § | of Tarrant County (1260933R) |
| v. | § | August 6, 2015 |
| | § | Opinion by Justice Gardner |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was clerical error in the trial court's judgment. The trial court's judgment incorrectly recites Appellant Thomas Ramirez Jr. was convicted of murder under section 19.02(b)(1) of the Texas Penal Code. The judgment is modified to reflect correctly that Appellant Thomas Ramirez Jr. was convicted of murder under section 19.02(b)(3) of the Texas Penal Code. As modified, it is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By  /s/ Anne Gardner
      Justice Anne Gardner



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00540-CR

THOMAS RAMIREZ JR.                                                      APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1260933R

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Thomas Ramirez Jr. of felony murder and assessed his punishment at life imprisonment. In four issues, Appellant contends: (1) the evidence was insufficient; (2) the trial court erred by refusing to admit evidence Appellant offered; (3) the trial court erred by denying his charge request for a lesser-included offense; and (4) the trial court erred by admitting

---

[1]*See* Tex. R. App. P. 47.4.

evidence of his prior convictions during the trial on punishment. We modify the judgment to correct clerical error and affirm as modified.

## Background

In count one of the indictment, the State alleged that Appellant intentionally or knowingly committed or attempted to commit an act clearly dangerous to human life, namely, Appellant discharged a firearm at or in the direction of a habitation or building and thereby caused the death of Ivan Daniel Valenzuela. The State further alleged that Appellant was at that time in the course of or in immediate flight from the commission or attempted commission of a felony, to-wit: unlawful possession of a firearm by a felon. Appellant had a prior state jail felony conviction from 2009 for the offense of theft from a person. The State in count one alleged felony murder. Tex. Pen. Code Ann. § 19.02(b)(3) (West 2011). The jury found Appellant guilty of count one.

## The Evidence

Appellant's girlfriend testified that on August 21, 2011, Appellant picked up her and her cousin around noon at her house in Oak Cliff, dropped off her cousin at a beer barn where her cousin worked, bought some Bud Light despite already being "somewhat" intoxicated, and headed to Arlington. Appellant's girlfriend stated that Appellant, while driving down the highway, used cocaine and drove in a crazy manner, swerving from lane to lane and going fast. Appellant was angry and babbling about a drive-by shooting at his sister's that she thought had happened years ago before she knew him. She said Appellant exited on Fielder,

2

and although they were supposed to go to Appellant's sister's house, Appellant just drove around. Appellant's girlfriend said the whole point was to hang out, but Appellant did not listen to her requests to stop driving around; eventually, however, he stopped at his sister's. Appellant's mother and sister tried to calm down Appellant and invited him to come inside, but Appellant, who remained angry and loud, refused to get out of his car. Appellant and his girlfriend left in Appellant's Suburban and started driving around again until Appellant stopped at someone else's house. Appellant went inside the house, but Appellant's girlfriend got out of the Suburban and started to walk away because Appellant refused to take her home. Appellant caught up with her in his Suburban, told her to get into the car, and then started driving around again. While driving through an Arlington neighborhood, she said Appellant pulled out a firearm and started shooting out the window as he drove around and drank beer. Appellant's girlfriend testified that she told Appellant to stop shooting, but he was mad and would not stop. Eventually, they returned to Appellant's sister's house where his sister came out to the car. Appellant gave his gun to his sister. Appellant's girlfriend said Appellant was supposed to take her home, so they took off; however, the police pulled up behind them fairly quickly. They stopped at another residence and went inside, but the police came to the door and arrested both of them. Appellant's girlfriend said she saw Appellant throw down some drugs after he exited the car before going inside the house.

Another witness testified that while near his pool in his backyard, he heard gunshots outside his home on Ravinia Drive in Arlington around 1:00 p.m. He ran to his gate and saw a red Suburban. He then ran through his house to his front porch and saw the Suburban driving off. The witness's roommate called 911, and shortly thereafter, the witness heard more gunshots in an area close to an apartment complex.

A convenience store worker at a Q Mart in Arlington said he heard four to five gunshots around 1:00 p.m. He saw a red Suburban sitting at a stop sign on Oakwood Street at the Sanford Street intersection in front of his store.

The jury also heard a 911 call from a man who identified himself as residing at Romack Court. In the call, he described a heavy-set, bald-headed, tattooed Mexican in his twenties, who was probably drunk, driving a red Suburban or Tahoe with a female in the vehicle while shooting his pistol in the air. State's Exhibits 88, 89, 91, 92, 93, and 94 show a heavy set, young Hispanic male with many tattoos and a close-shaved haircut. The 911 caller said the vehicle's license plate started with a C. State's Exhibit 6 showed the license plate on Appellant's red Suburban started with a C. The 911 caller said the Suburban was headed south on Cousins Street.

Officer Keith Crow went to the witness's home on Ravinia Drive. He found and collected three .40-caliber shell casings in the intersection in front of the home. Officer Crow then went to Romack Court. Officer Crow found another .40-caliber shell casing matching those he found on Ravinia and a Bud Light beer

4

can. He collected both because the witnesses said the driver, as he passed by shooting, had dropped a beer can out of the Suburban's window.

Officer Crow said he then got a call from Officer Charles Carik, so Officer Crow drove to the Cousins Street location, where he saw that Officer Carik had detained both Appellant and Appellant's girlfriend. Officer Crow searched the Suburban and found another Bud Light can inside the vehicle that matched the can he had picked up on Romack Court.

Officer Chad Hanny, who assisted in arresting Appellant, said a young woman directed his attention to a little blue baggie that Appellant had dropped within six inches of his feet as he was about to be frisked. The contents of the little blue baggie were later identified as cocaine. Officer Hanny transported Appellant to the Arlington jail where Appellant was tested for gunshot residue.

The father of Ivan Valenzuela said his son was supposed to attend a family get-together on Sunday, August 21, but Ivan never showed up. Ivan's father had telephoned Ivan before noon, and Ivan had answered; when Ivan's father attempted to call his son again after 1:00 p.m., he did not answer. After Ivan's father had not heard from his son on Monday, he went to Ivan's apartment to check on him. Ivan lived on the second floor of the Oakwood Court Apartments on Oakwood Lane in Arlington.

Ivan's neighbor said Ivan would frequently sit on the floor of his second-floor apartment and listen to his headphones while smoking cigarettes. Ivan's neighbor said he would acknowledge her as she came and went from the

5

Oakwood Court Apartments. When Ivan's father arrived, he could see his son sitting by the window of his upstairs apartment leaning against the wall with his head down, not moving. State's Exhibit 18, a photo shot from outside the apartment building, shows Ivan was visible through his second story window. When Ivan did not respond, his father obtained a key from the managers, and they went inside his son's apartment. They found Ivan dead. Ivan's father called 911.

Detective Caleb Blank led the homicide investigation. Detective Ben Lopez assisted him. They saw a hole in the window screen that appeared to be made from the trajectory of the bullet that had killed Ivan. Ivan's apartment was across the street from the Q Mart convenience store.

Five days after the shooting, officers searched the street in front of the crime scene for shell casings. They recovered .40-caliber shell casings and one .25-caliber casing in the same vicinity. They were not able to recover the firearm Appellant had allegedly fired. The detectives searched the Suburban again and found another baggie of cocaine under the passenger seat.

The detectives had the shell casings and the Bud Light beer can tested for DNA and fingerprint comparisons. The Bud Light beer can had a fingerprint matching Appellant's, but the shell casings did not produce any DNA or fingerprints matching Appellant's. Appellant's face tested positive for gunshot residue.

6

A firearms specialist said that he was able to establish that the bullet that killed Ivan had come from a Fabrique National, otherwise known as an FN; a Kel Tec; a Smith & Wesson; a Springfield Inc., which was also known as Springfield Armory; or a Walther firearm based on the FBI list he used to identify the bullet. He said firearms were periodically added to the list. The firearm specialist acknowledged that Glocks were not on the FBI list and that witnesses had testified that Appellant had been shooting a Glock.

The chief medical examiner testified that a distant shot had killed Ivan. The autopsy revealed that Ivan had died from a gunshot wound to the head. The projectile was a .40-caliber shell. He said the bullet, after it entered Ivan's temple, had traveled slightly downward from left to right toward the back of Ivan's head.

Sufficiency of the Evidence

In his first issue, Appellant contends the evidence is insufficient to support his conviction. Initially, Appellant attacks the finding that he was shooting a gun at all. Appellant stresses that no firearm was found. Appellant asserts that his ex-girlfriend may have felt pressured to cooperate with the prosecution. Regarding the gunshot residue on Appellant's face, Appellant emphasized that even the gunshot-residue examiner admitted that the residue could have been caused by something other than a gunshot. Next, Appellant contends that even if the evidence was sufficient to prove he was driving around and shooting a firearm, there was no evidence his conduct caused Ivan's death. Because the

7

firearm was not recovered, there was no way to show a correlation between the bullet and the firearm that Appellant had allegedly possessed. Appellant stresses that the medical examiner's testimony was that the bullet travelled slightly downward. Appellant contends the State's theory was that Appellant was shooting from the street level in the direction of a second story apartment; he maintains that a bullet would not strike Ivan's head on the second floor and then travel slightly downward.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are

8

reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

There was abundant evidence Appellant was shooting a firearm. Appellant's girlfriend, who was in the car with him, said he was. The jury decides whom to believe or disbelieve. *See Turro v. State*, 867 S.W.2d 43, 48 (Tex. Crim. App. 1993). We do not re-evaluate the factfinders' credibility determinations. *See Isassi*, 330 S.W.3d at 638. Besides Appellant's girlfriend, other witnesses identified the shooting as coming from the same type of car that Appellant was driving and from the same locations, including the street in front of the Oakwood Court Apartments, where they heard gunshots. The gunshot residue on Appellant's face was further evidence supporting the finding that Appellant was the shooter. The jurors decided how much weight to give this evidence. *See Dobbs*, 434 S.W.3d at 170. We do not re-evaluate the factfinders' weight determinations. *See Isassi*, 330 S.W.3d at 638.

Regarding whether Appellant caused Ivan's death, Ivan's father telephoned Ivan successfully before noon and unsuccessfully after 1:00 p.m. on August 21. Appellant's shooting spree occurred around 1:00 p.m. on August 21, which corresponded with Ivan's father's unsuccessful attempt to call Ivan after

9

1:00 p.m. after successfully telephoning him earlier. The cause of Ivan's death was a gunshot wound to the head by a .40-caliber shell from a distant range. The police recovered .40-caliber shell casings from three locations where witnesses had heard gunfire and had seen Appellant's Suburban—Ravinia Drive, Romack Court, and on the street in front of the Oakwood Court Apartments.

Regarding the trajectory of the bullet through Ivan's head, Appellant's argument fails to take into consideration the position of Ivan's body and head when he was struck. Given all the other evidence, the jury reasonably could have found that Ivan was looking downward when the bullet struck him. State's Exhibit 9 shows the street level was slightly more elevated than the ground level of the apartment building, which would have reduced the angle. State's Exhibit 25, a photo from essentially the base of Ivan's window looking out toward the street while a vehicle was driving down the street, shows the variation in the elevations, especially with someone sitting in a vehicle, was not as great as Appellant suggests in his brief. The medical examiner said the lividity, that is, the pooling of the blood that occurs after death because the blood is no longer circulating, in the front of Ivan's face suggested that he died while he was sitting up and that his face was looking downward. State's Exhibit 20 shows the base of the window at which Ivan sat was at most a foot from the floor, and it shows the vertical edge of the window was less than a foot from a wall that ran perpendicular to the window. Ivan is shown sitting on the floor with his back propped up against that wall. Outside the window is a street, and across the

10

street is the convenience store. Ivan's chin rests on his chest. His left hand still holds a cigarette while simultaneously steadying a forward-tilted, canned beverage, which suggests little or no movement after being shot. The lividity discoloration is evident in his lower face and his lower extremities in State's Exhibits 20 and 25. The medical examiner said the bullet did not strike Ivan perpendicularly but at an angle and described it as a glancing gunshot wound. The trajectory of a bullet through the head of a victim from a gun fired from a lower elevation to a higher one would vary depending upon whether the head was tilted upward, positioned level with the ground, or bent looking downward. The cumulative force of the evidence when viewed in the light most favorable to the verdict shows the jury could have reasonably concluded Ivan was looking downward when he was shot, which would explain the slightly downward trajectory of the bullet.[2] *See Sorrells*, 343 S.W.3d at 155.

We hold the evidence was legally sufficient to support Appellant's conviction and overrule his first issue.

## Exclusion of Email

In his second issue, Appellant complains about an email that a Ms. Roberts, one of Ivan's friends, had sent Detective Blank. Appellant asserts that his theory was that Ivan, who had been convicted of first degree felony delivery

---

[2]We note that defense counsel, during his closing arguments, did not rely at all on the trajectory of the bullet.

11

of drugs, was dealing drugs and was fearful for his life.[3]  Appellant maintains that Ms. Roberts, in her email, indicated Ivan was afraid and that she was concerned that the people Ivan was afraid of had killed him.  Appellant asserted he offered the email to show the detectives' investigation was deficient and not for the truth of the matter asserted, but the trial court sustained the State's hearsay objection.

The State responded that the trial court's evidentiary rulings are reviewed using an abuse of discretion standard.  *Foster v. State*, 180 S.W.3d 248, 250 (Tex. App.—Fort Worth 2005, pet. ref'd).  The State argued that the jury would have had to believe the factual assertions in the email to adopt Appellant's argument that the officers' investigation was flawed; therefore, the trial court properly excluded the email as hearsay.  *See* Tex. R. Evid. 801(d) ("'Hearsay' means a statement that:  (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.")  Alternatively, the State argued the trial court properly excluded the email because its probative value was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  *See* Tex. R. Evid. 403.  The State stressed that the email was full of historical details irrelevant to explaining the officers' conduct during their investigation; that the letter rambled on, sometimes cryptically, about many other things; and that the threat it referenced happened years earlier.  Finally, the

---

[3]Ivan had a first degree felony conviction for delivery of amphetamine.

State asserted any error was harmless because Appellant cross-examined Detective Blank about the email extensively. *See* Tex. R. App. P. 44.2(b).

Assuming, without deciding, that the email was admissible and improperly excluded, we hold that the error, if any, was harmless. Tex. R. App. P. 44.2(b). Ms. Roberts's email is part of our record. The email is dated August 30, 2011—only nine days after the shooting and eight days after Ivan's body was discovered. Ms. Roberts was apparently trying to help the police identify suspects.

She initially identified as a suspect a "big 'Mexican' guy" who might have been competing for the attention of the same girl that Ivan had shown an interest in. She then goes on for several pages about "'the thing in Virginia.'" Ms. Roberts related that Ivan had spent time in Virginia with a friend from Texas named Justin who worked for an organized crime organization in Virginia and whom Ivan had described as doing "'really scary-bad stuff.'" She related that at some point, Ivan had told her that he had begged Justin not to kill him after Ivan was accused of stealing a power washer while driving Justin's truck, which caused the police to suspect Justin.[4] Ms. Roberts wrote that Ivan had hid when he had returned to Texas.

At trial, defense counsel cross-examined Detective Blank extensively regarding his failure to aggressively follow up on Ms. Roberts's email. Detective

---

[4]This is our understanding of Ms. Roberts's email. We agree with the State that her email can be difficult to follow.

13

Blank said the email described a theory involving the east coast mafia in Virginia. Detective Blank explained that when he had talked to Ms. Roberts over the phone, she had mentioned an upsetting conversation about a washing machine from several years earlier. When defense counsel asked about the part where Ivan had begged not to be killed, Detective Blank responded, "It was a[n] improbable lead when I already had specific knowledge and probable cause to charge [Appellant] with the offense at hand." During closing arguments, defense counsel even argued these investigative deficiencies to the jury. Consequently, the jury was aware of Ms. Roberts's email and was aware there were other leads possibly pointing to other suspects that Detective Blank did not pursue. Appellant wanted the email admitted to undermine Detective Blank's decision not to pursue these other leads, but Appellant already had that ability and made his point through his cross-examination of Detective Blank, which the trial court expressly stated Appellant would be allowed to do. We hold the error, if any, in not admitting Ms. Roberts's email was harmless. See Tex. R. App. P. 44.2(b).

Having held the error, if any, was harmless, we overrule Appellant's second issue.

Failure to Charge on the Lesser-Included Offense

In his third issue, Appellant argues that the trial court abused its discretion by denying his request that the charge include a question pertaining to the lesser-included offense of deadly conduct. The State in count one alleged felony murder under penal code section 19.02(b)(3), which provides:

14

(b)  A person commits an offense if he:

. . . .

(3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in the immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

Tex. Pen. Code Ann. § 19.02(b)(3).  Specifically, the State alleged that Appellant intentionally or knowingly committed or attempted to commit an act clearly dangerous to human life, namely, Appellant discharged a firearm at or in the direction of a habitation or building and thereby caused Ivan's death and, further, that Appellant was at that time in the course of or immediate flight from the commission or attempted commission of a felony, to-wit:  unlawful possession of a firearm by a felon.

In the indictment, the felony "other than manslaughter" that Appellant committed was unlawful possession of a firearm by a felon, which is a third degree felony.  *Id.* § 46.04(a), (e) (West 2011).  It was in the course of committing that offense (unlawful possession of a firearm by a felon) that Appellant allegedly committed "an act clearly dangerous to human life that cause[d] the death of an individual."  *Id.* § 19.02(b)(3).  Specifically, he "discharge[d] a firearm at or in the direction of a habitation or building, which caused the death of Ivan Daniel Valenzuela."  Appellant contends the offense of deadly conduct is subsumed within that latter allegation, that is, while Appellant

15

was committing the felony offense of unlawful possession of a firearm by a felon, he committed the offense of deadly conduct. The deadly conduct provision upon which Appellant relies provides as follows:

> (b)   A person commits an offense if he knowingly discharges a firearm at or in the direction of:
>
> . . . .
>
> (2)   A habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied.

*Id.* § 22.05(b)(2) (West 2011).

We use a two-step analysis to determine whether an appellant was entitled to a lesser-included offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993). First, the lesser offense must come within article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006); *Moore v. State,* 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). The State does not dispute that Appellant met the first prong. *See* Tex. Code Crim. Proc. Ann. art. 37.09(1), (2); *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g). Without deciding, we will assume for purposes of our analysis that Appellant met the first prong. *See Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997) (stating first prong met where neither party disputed it), *cert. denied*, 523 U.S. 1079 (1998).

16

Under the second prong, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73. The evidence must be evaluated in the context of the entire record. *Moore*, 969 S.W.2d at 8. There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser-included offense. *Id.* The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall*, 225 S.W.3d at 536.

Appellant contends he met the second prong as well. Appellant again asserts there was no evidence his conduct caused Ivan's death. We disagree. It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted. *See Skinner*, 956 S.W.2d at 543. Under the facts, if the jury found Appellant had engaged in the deadly conduct, the lesser-included offense, it had no rational basis for acquitting Appellant of the greater offense of felony murder. *See Moore*, 969 S.W.2d at 8; *Jones v. State*, 241 S.W.3d 666, 672 (Tex. App.—Texarkana 2007, no pet.) ("[T]here was no germane evidence presented for the jury to rationally consider that the lesser-

included offense of simple assault took place; under the evidence presented, if the jury found that any assault occurred at all, it was an aggravated assault."). There was not a scintilla of evidence that Ivan's death was caused by anything other than Appellant's discharging a firearm while being a felon in possession of a firearm. *See Moore*, 969 S.W.2d at 8*.*

We hold the trial court did not err by refusing Appellant's request for a charge on the lesser-included offense and overrule Appellant's third issue.

<u>Admission of Prior Convictions During the Punishment Trial</u>

In his fourth issue, Appellant contends that during the punishment phase, the trial court erred by overruling his objections to State's Exhibits 96, 97, 99, and 100, which were convictions not proven through fingerprint comparison. The State argued the county identification numbers were the same on each document and, in that way, were connected to the person "rolled" in court that day. Appellant notes that this court has, in unpublished opinions, twice ruled against his position on this issue. *See Jones v. State*, No. 02-11-00060-CR, 2012 WL 3735890, at *1–2 (Tex. App.—Fort Worth Aug. 30, 2012, pet. ref'd) (mem. op, not designated for publication); *Norris v. State*, No. 02-10-00468-CR, 2012 WL 2135594, at *2–3 (Tex. App.—Fort Worth June 14, 2012, pet. ref'd) (mem. op, not designated for publication). However, absent fingerprints, Appellant argues that other inmates may have been abusing the system by using Appellant's name as an alias.

To establish that a defendant has a prior conviction, the State must prove beyond a reasonable doubt that (1) a prior conviction exists and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex.Crim. App. 2007); *Beck v. State*, 719 S.W.2d 205, 210 (Tex. Crim. App. 1986) ("It is incumbent on the State to go forward and show by independent evidence that the defendant is the person so previously convicted."); *see also Timberlake v. State*, 711 S.W.2d 50, 52 (Tex. Crim. App. 1986) ("[T]he facts of each case must contain reliable evidence showing that the defendant had been previously convicted of the offense for which evidence is offered."). These two elements may be shown by certified copies of a judgment and a sentence, including fingerprints supported by expert testimony identifying them as identical with known prints of the defendant. *See Vessels v. State*, 432 S.W.2d 108, 117 (Tex. Crim. App. 1968). There is no required mode of proof; the State may prove a prior conviction in a number of different ways. *Flowers*, 220 S.W.3d at 921–22 ("Just as there is more than one way to skin a cat, there is more than one way to prove a prior conviction."). In proving the elements, the State may use "[a]ny type of evidence, documentary or testimonial." *Id.* at 922; *see Human v. State*, 749 S.W.2d 832, 836 (Tex. Crim. App. 1988). The factfinder looks at the totality of the evidence to determine whether there was a previous conviction and whether the defendant was the person convicted. *Flowers*, 220 S.W.3d at 923.

John Pauley, a deputy in the Tarrant County Sheriff's Office, said a county identification number was assigned to a person the first time he or she came to

jail. He said that number was not duplicated for any other person and that the person assigned that number would always get that number every time that person came back into custody. He rolled Appellant's prints the same afternoon during which he testified. Those prints matched the prints and the county identification number that the sheriff's department kept on file for Appellant. State's Exhibits 96, 97, 99, and 100 had the same county identification number. Deputy Pauley admitted that initially sometimes mistakes were made.

Appellant's arguments go to the weight of the evidence and not to its admissibility. That State showed prior convictions and linked them to Appellant. *See Flowers*, 220 S.W.3d at 921. The trial court signaled to the jury that the issue was one of weight and not admissibility. When admitting State's Exhibits 96, 97, 99, and 100, the trial court said, "At this time, the Court is going to overrule the objection to State's Exhibits 96, 97, 99, 100. The jury will assign the proper weight to be given to the evidence." Appellant does not direct us to any other evidence supporting his speculation that these convictions were the product of someone else successfully using his name and county identification number as aliases.

We hold that the trial court did not err by admitting State's Exhibits 96, 97, 99, and 100 and overrule Appellant's fourth issue. *See Jones*, 2012 WL 3735890, at *1–2; *Norris*, 2012 WL 2135594, at *2–3.

## Reformation of Judgment to Speak the Truth

An appellate court has the authority to reform a judgment to make the record speak the truth. *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). The authority to correct a clerical error is not dependent upon a request by either party or upon whether they objected and preserved error in the trial court. *Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.—Dallas 1991, pet. ref'd). The judgment reflects that Appellant was convicted of murder under section 19.02(b)(1) of the Texas Penal Code. This is clerical error. The jury convicted Appellant on the first count in the indictment. The State alleged in the first count of the indictment felony murder under section 19.02(b)(3) of the penal code. Tex. Penal Code Ann. § 19.02(b)(3). We reform the judgment to speak the truth, which is that Appellant was convicted under section 19.02(b)(3) of the Texas Penal Code.

## Conclusion

Having overruled Appellant's four issues and having corrected the judgment to speak the truth, we affirm the trial court's judgment as modified.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: GARDNER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 6, 2015

21